UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE R. IBARRA,<br><br>　　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. EDCV 16-1197 AS<br><br>**MEMORANDUM OPINION AND ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**I. PROCEEDINGS**

On April 27, 2012, Plaintiff Yvonne R. Ibarra ("Plaintiff") applied for social security benefits alleging a disabling condition

---

[1] Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin. See 42 U.S.C. § 205(g); Fed. R. Civ. P. 25(d).

beginning April 1, 2010. (AR 143). On November 4, 2013, Administrative Law Judge ("ALJ") William K. Mueller examined the records and heard testimony from Plaintiff and vocational expert ("V.E.") David Rinehart. (AR 31-58). On December 4, 2013, the ALJ denied Plaintiff benefits in a written decision. (AR 14-26). The Appeals Council denied review of the ALJ's decision. (AR 1-3).

On June 8, 2016, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 1). On November 15, 2016, Defendant filed an Answer to the Complaint, (Docket Entry No. 15), and the Certified Administrative Record ("AR"), (Docket Entry No. 16). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 12). On February 9, 2017, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 17).

## II. SUMMARY OF ALJ'S DECISION

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 17-19). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the date of her application. (AR 19). At step two, the ALJ found that Plaintiff's severe impairments included a right hip replacement and obesity. (AR 19). In making this finding, the ALJ ruled that Plaintiff's medically determinable adjustment disorder did not constitute a severe mental impairment. (AR 20). At step three, the ALJ found

that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20-21).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, "except occasionally perform postural activities." (AR 21). In making his RFC finding, the ALJ ruled that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were "less than fully credible." (AR 22).

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a waitress, owner/operator of a painting company, personnel recruiter, and assistant manager. (AR 25-26). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26).

### III. STANDARD OF REVIEW

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation

omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff raises two grounds for relief. First, Plaintiff claims that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ improperly determined that Plaintiff's lumbar spine impairment and adjustment disorder were not "severe" impairments. (See Joint Stip. at 4-7). Second, Plaintiff claims that the ALJ provided insufficient reasons for rejecting her subjective complaints. (Id. at 13-15).

## V. DISCUSSION

After reviewing the record, the Court finds that Plaintiff's claim regarding her adjustment disorder warrants remand for further consideration. The Court declines to address Plaintiff's other claims.

**A.   The ALJ Erred In Evaluating the Medical Evidence**

Social Security Ruling 85-28 governs the evaluation of whether a claimant's impairments are "severe":

> An impairment or combination of impairments is found "not severe" . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . i.e., the person's impairment[] has no more than a minimal effect on his or her physical or mental ability[] to perform basic work activities[.]

SSR 85-28 at *2-*3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (the severity concept is "a de minimis screening device to dispose of groundless claims") (citation omitted). An impairment or combination of impairments may be found not severe only if the evidence establishes a "slight abnormality that has no more than a minimal effect on an individual's ability to work," and a finding that a medically determinable impairment is non-severe must be "clearly established by medical evidence." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005).

Plaintiff alleges that the ALJ erred in evaluating the severity of her adjustment disorder principally by improperly analyzing medical evidence. (Joint Stip. at 4-7). Social Security regulations require the Agency to "evaluate every medical opinion [it] receive[s]," giving more weight to evidence from a claimant's treating physician. 20 C.F.R. § 404.1527(c). Where a treating or examining physician's opinion is contradicted by another doctor, the Commissioner "must determine credibility and resolve the conflict." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir.

2009) (quoting Thomas v. Barnhart, 278 F.3d 947, 956–57 (9th Cir. 2002)). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995), as amended (Apr. 9, 1996) (quoting Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician. Id.

The ALJ discussed Plaintiff's adjustment disorder in the following excerpt:

> [Plaintiff's] medically determinable impairment of adjustment disorder does not limit [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere.
>
> On August 18, 2012, Tanya Scurry, M.D., Board certified in psychiatry and neurology, conducted a complete consultative examination of [Plaintiff]. [Plaintiff's] chief complaint was pain all the time. [Plaintiff] admitted she was able to drive, do some light chores, make sandwiches, help her daughter with homework, and listen to the radio. Based on the examination, Dr. Scurry diagnosed [Plaintiff] with adjustment disorder with anxious mood. Dr. Scurry opined

6

[Plaintiff] was moderately limited in most mental functions.

* * *

The [ALJ] finds the [Plaintiff's] medically determinable mental impairment causes mild restriction in activities of daily living; mild difficulties in social functioning; and mild difficulties with regard to concentration, persistence, or pace, and has resulted in mild episodes of decompensation which have been of extended duration in the fourth area. The [ALJ] has also considered whether the "paragraph C" criteria are satisfied and finds the evidence fails to establish the presence of the "paragraph C" criteria in this case. Accordingly, the [plaintiff's] medically determinable mental impairment is nonsevere.

In determining there is no severe mental impairment, the [ALJ] gives significant weight to the clinical findings of the consultative examiner. However, the [ALJ] finds the moderate mental limitations to be unsupported by the objective medical evidence, including Dr. Scurry's report. The objective findings noted from the examination fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled. [Plaintiff] admitted she was able to drive, do household chores, read and listen to music, and help her daughter. Dr. Scurry appeared to have relied quite heavily

on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported. As explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints. Moreover, Dr. Scurry's opinion is based on a single examination of [Plaintiff] and may have been different if it was based on evaluation of [Plaintiff] over a longer period of time.

The [ALJ] gives great weight to the State agency medical consultants who found [Plaintiff's] mental impairment nonsevere. This opinion is consistent with the record. [Plaintiff] had little mental health treatment. Her admitted activities also show her mental limitations were mild.

(AR at 20 (citations omitted)).

On August 18, 2012, Plaintiff underwent a consultative examination with Tanya Scurry, M.D. (AR 243-48). Dr. Scurry noted that Plaintiff was an "adequate" historian and her chief complaint was "pain all the time." (AR 243). Plaintiff described the history of her present illness, past psychiatric history, medications, family psychiatric history, past medical history, social history, education history, habits, legal history, and employment history. (AR 243-44). Plaintiff discussed her activities of daily living, noting that she lived with family; her children assisted her with self-dressing,

self-bathing, and personal hygiene; she could drive a car; she did not engage in "[o]utside activities;" she could pay bills and handle cash; she could go out alone; she had "good" relationships with family and friends; she had "some difficulty" focusing attention; she had "difficulty" completing household tasks; she had "some difficulty" making decisions; and, every day, she read, did "light chores," made sandwiches, helped her youngest daughter with homework, and listened to the radio. (AR 244-45).

Dr. Scurry conducted a mental examination, first observing that Plaintiff had "fair" grooming and hygiene, was able to volunteer information spontaneously, was experiencing "mild" psychomotor retardation, appeared "genuine and truthful" with no evidence of exaggeration or manipulation, and did not appear to be under the influence of alcohol. (AR 245). Dr. Scurry noted that Plaintiff's thought processes appeared "coherent and organized," with no "tangentiality or loosening of associations." (AR 245). Dr. Scurry also noted that Plaintiff's thoughts were "relevant and non-delusional" with no "bizarre or psychotic" content or reports of visual or auditory hallucinations. (AR 245). Dr. Scurry characterized Plaintiff's mood as "stressed" and her affect as "anxious, distractible and congruent with thought content." (AR 245). Dr. Scurry noted that Plaintiff acknowledged "feelings of hopelessness, helplessness or worthlessness." (AR 245). Dr. Scurry stated that Plaintiff's speech was normal and clearly articulated, Plaintiff was alert to "time, place, person, and purpose," and Plaintiff appeared to be "of at least average intelligence." (AR 246).

Dr. Scurry conducted several tests of Plaintiff's memory, fund of knowledge, concentration and ability to perform calculations, ability to interpret a proverb, ability to articulate similarities and differences, and insight and judgment. (AR 246). Plaintiff: (1) completed a "digit span six forward" with one error and three backwards accurately; (2) was able to "recall three items (dog, green, sky) immediately and two/three items after five minutes and couldn't get the third word with a hint"; (3) could recall how President Kennedy died; (4) correctly stated that 80 cents would be received from a dollar if two oranges were bought at 10 cents each; (5) could do simple calculations like "4 + 3 = 7," spell "world" forward and backward, and follow a conversation well; (6) replied "the house is built with glass instead of foundation" when asked to interpret the proverb "[p]eople in glass houses shouldn't throw stones"; (7) stated that a table and chair were similar because both were "sturdy" and had four legs, but were different because "one you sit on and one you eat off"; and (8) stated that, if she found a stamped addressed envelope on the ground she would put it in a mailbox. (AR 246).

Dr. Scurry diagnosed Plaintiff with "adjustment disorder with anxious mood." (AR 247). Dr. Scurry observed that Plaintiff had described herself as "stressed" and appeared "anxious and overwhelmed," but she also opined that Plaintiff had had difficulties in the memory, fund of knowledge, and proverb sections of the mental status exam. (AR 247). Dr. Scurry stated that Plaintiff's performance on the exam could be attributable to her underlying

10

anxiety disorder not being managed fully or the effects of alprazolam, which Plaintiff was taking at the time of the examination. (AR 247). Dr. Scurry opined that Plaintiff could be re-tested after being tapered off alprazolam, but a "better choice" for her symptoms would be an anti-depressant to manage her anxiety. (AR 247). Dr. Scurry also stated that resolution of Plaintiff's other medical problems would likely "go a long way" toward improving her mood. (AR 247). Dr. Scurry stated that Plaintiff could not engage in gainful employment and should receive "more intensive psychiatric and medical management" in order to return to work. (AR 247). Dr. Scurry assessed no limitations in Plaintiff's ability to carry out simple job instructions or perform work activities without "special or additional supervision," but, based on Plaintiff's "presentation and performance on the mental status exam," Dr. Scurry assessed moderate limitations in Plaintiff's ability to follow complex instructions, interact with co-workers and the public, maintain concentration and attention, associate with day-to-day work activity, accept instructions from supervisors, and maintain consistent attendance. (AR 247-48).

During initial review, State agency medical consultants reported that Plaintiff's affective disorder was a medically determinable but non-severe impairment resulting in mild limitations in maintaining concentration, persistence, and pace and no limitations in any other "paragraph B" criterion. (AR 63-64). The consultants stated that Dr. Scurry's report relied "heavily" on Plaintiff's subjective reports, and the "totality of the evidence" did not support the opinion. (AR 67). The consultants also stated that Dr. Scurry's

report was based on a "snapshot" of Plaintiff's functioning. (AR 67). The consultants' findings were unchanged on reconsideration. (AR 74, 77-78).

Remand is warranted. In rejecting Dr. Scurry's assessed limitations, the ALJ first stated that the limitations were "unsupported by the objective medical evidence" and the examination "fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled." (AR 20). However, a statement that a physician's opinion is "inconsistent with the medical evidence" is in and of itself not relevant in evaluating an ALJ's reasons for rejecting a physician's opinion, and the Ninth Circuit has cautioned against relying on "boilerplate" language. See Garrison, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."); cf. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ may not reject treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record; ALJ must "do more than offer his conclusions"). The ALJ's related finding that Dr. Scurry's examination "fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled" is not specific, legitimate, or supported by reference to substantial evidence, as the ALJ does not provide any support for this conclusion or identify what "significant

clinical and laboratory abnormalities" one would expect if Plaintiff were disabled or her mental impairment were severe. See Bennett v. Colvin, 202 F.Supp.3d 1119, 1134 (N.D. Cal. 2016) (identical language appeared to be improper "speculation" by ALJ and ALJ could not reject an evaluating doctor's opinion based on "his own personal medical conjecture").

Next, the ALJ's assertion that Dr. Scurry relied "quite heavily" on Plaintiff's reports is belied by the record. Although Dr. Scurry asked Plaintiff about her medical history and activities of daily living, Dr. Scurry's diagnosis was based on Plaintiff's performance on several mental status tests and specifically on Plaintiff's "difficulties in the memory, fund of knowledge and proverb sections." (AR 247). The ALJ erred insofar as he discredited Dr. Scurry's assessment as based predominantly on Plaintiff's own subjective complaints. See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion . . . The ALJ offered no basis for his conclusion that these opinions were based more heavily on Ghanim's self-reports, and substantial evidence does not support such a conclusion."); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations . . . There is nothing in the record to suggest that Dr. Randhawa disbelieved Ryan's description of her symptoms, or that Dr. Randhawa relied on those descriptions more heavily than his own

13

clinical observations in reaching the conclusion that Ryan was incapable of maintaining a regular work schedule."); Davis v. Colvin, 2015 WL 5730581 at *9 (D. Ariz. 2015) ("Contrary to the ALJ's characterization, there is no indication in the record that Dr. Kim 'accepted uncritically as true most, if not all, of what the claimant reported.'").[2]

The ALJ also rejected Dr. Scurry's limitations because Dr. Scurry's examination was based on "a single examination of [Plaintiff] and may have been different if it was based on evaluation of [Plaintiff] over a longer period of time." (AR 20). The ALJ provided no explanation for his finding regarding what further examination "may have" shown, and this speculative finding is not supported by specific and legitimate reasons. This rationale is also suspect given that the ALJ rejected Dr. Scurry's assessment in favor of the assessment of non-examining State agency medical consultants. (AR 20); see Lester, 81 F.3d at 832 ("[T]he ALJ noted that Dr. Taylor's conclusions were based on 'limited observation' of the claimant. While this would be a reason to give less weight to Dr. Taylor's opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has

---

[2] It is also unclear which of the activities cited by the ALJ – driving, doing household chores, reading and listening to music, and helping with homework – were inconsistent with moderate limitations in Plaintiff's ability to function in the workplace on a sustained basis, particularly as Plaintiff has also reported that she performed many of these activities with assistance and slowly or with substantial pain. (See generally AR 40-51, 188-94); cf. Reddick, 157 F.3d at 722 (ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports," resulting in paraphrasing of record material that was "not entirely accurate regarding the content or tone of the record").

never examined the claimant." (emphasis in original)). Moreover, when an ambiguity exists, the ALJ has the duty and the tools to develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence relevant to a finding of disability triggers the ALJ's duty to develop the record).

Additionally, the ALJ credited the finding of nonseverity by State agency medical consultants rather than Dr. Scurry's findings because Plaintiff had "little mental health treatment." (AR 20). However, the Ninth Circuit has noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," and "the fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [an examining physician's] assessment of [the] claimant's condition is inaccurate." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). The Court also observes that, at the time of Dr. Scurry's examination, Plaintiff was taking alprazolam, or Xanax, which is used to treat anxiety and panic disorders. Arrington v. Colvin, 2014 WL 2586237 at *4 n.6 (W.D. Va. 2014).

Therefore, the reasons the ALJ provided for discrediting Dr. Scurry's findings were not specific, legitimate, and supported by substantial record evidence.

**B.  The Court Cannot Conclude That The ALJ's Error Was Harmless**

"[H]armless error principles apply in the Social Security . . . context."  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)).  Generally, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'"  Id. (citing Carmickle v. Comm'r Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)).

The Court cannot conclude that the ALJ's error was harmless. The ALJ's rejection of the limitations assessed by Dr. Scurry and acceptance of the findings of State agency consultants were central to the ALJ's finding that Plaintiff's mental impairments were nonsevere, i.e., have "no more than a minimal effect on [Plaintiff's] ability to work."  Webb, 433 F.3d at 686-87.  The severity of Plaintiff's mental impairments is directly relevant to assessing her RFC, and a claimant's RFC "may be the most critical finding contributing to the final . . . decision about disability."  See McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (quoting SSR 96—5p).  Here, Plaintiff's RFC included no mental limitations, and the RFC determination was critical to the ALJ's determination that there was work that Plaintiff could perform despite her limitations.  (AR 21, 25-26).  Therefore, because the Court cannot determine that the ALJ's errors are "inconsequential to the ultimate disability determination," the errors cannot be deemed harmless.  See Carmickle, 466 F.3d at 885.

**C.  Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by remand, or where the record is fully developed, it is appropriate to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Here, the Court remands because the ALJ did not analyze Dr. Scurry's opinion in accordance with applicable law, which casts into doubt the ALJ's nonseverity finding and his formulation of Plaintiff's RFC.  The record does not affirmatively establish that, in re-evaluating this case, the ALJ would necessarily be required to accept Dr. Scurry's opinion, find Plaintiff's mental impairments "severe," or find Plaintiff disabled.  Remand is therefore appropriate.

The Court has not reached issues not discussed supra except to determine that reversal with a directive for the immediate payment of benefits would be inappropriate at this time.  In addition to the issues addressed in this order, the ALJ should consider on remand any other issues raised by Plaintiff, if necessary.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 9, 2017.

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE